# STRAFFORD,

## JANUARY TERM, A. D. 1858.

---

### ATLANTIC MUTUAL FIRE INSURANCE CO. v. SANDERS & a.

It is a fatal variance if a note, declared on as of a particular date, proves not to have any date.

An omission to state in a declaration any time when the promise was made, is bad on demurrer, but it is not a ground of nonsuit.

The time when any traversable fact happened, is not material, unless it constitutes a material part of a contract declared on, or is the date of some written contract or record.

A breach assigned, either less or larger than the contract, is bad on demurrer, but is not ground of nonsuit.

Private statutes and by-laws may be proved, though not set out in pleading, where it is not necessary to state them as part of the cause of action.

Both may be proved by printed copies, attached to a policy of insurance, where the evidence tends to show the policy accepted by the defendant.

Where the charter provides that all assessments shall be determined by the directors, and lays down the rules by which the amount to be raised, and the manner it is to be apportioned, are fixed, all that is necessary is, that the directors determine by vote that an assessment be made ; and such vote is a sufficient requirement of a payment to be made on the premium note.

Where a by-law requires payment of an assessment, designating the class of property assessed, to be published, a notice, not specifying the amount payable on each note, is sufficient.

It is immaterial in what manner the stated meetings of directors have been fixed. It is enough if they are in fact regularly held on stated days.

Assumpsit for money paid does not lie to recover a premium note.

IN ASSUMPSIT. The first count alleges that the defendants, on the 20th of June, 1853, by their note of that date, by them

signed, for value received in policy No. 3474, in the third class of said company, dated June 20, 1853, issued by the Atlantic Mutual Fire Insurance Company, promised to pay the said company, or their treasurer for the time being, fifteen dollars, in such portions and at such times as the directors of said company may, agreeably to their act of incorporation and by-laws, require ; and the plaintiffs aver that the directors of said company, on January 1, 1855, required and ordered that the defendants pay an assessment of fifteen dollars upon said note, to cover said defendants' proportional part of the losses and expenses which had occurred in the third class of said company, since the 1st day of January, 1854, of which said defendants then and there had notice, whereby an action hath accrued to the plaintiffs, to have and recover the said sum of fifteen dollars.

The second count alleges that the defendants, at, &c., by their other note, by them signed, for value received in policy No. 3474, in the third class of said company, dated June 20, 1853, issued by the Atlantic Mutual Fire Insurance Company, promised to pay the said company, or their treasurer for the time being, the sum of fifteen dollars, in such portions and at such times as the directors of said company may, agreeably to their act of incorporation and by-laws, require ; and the plaintiffs aver that the directors of said company, on January 1, 1855, required said defendants to pay fifteen dollars, on demand, of which said defendants then and there had notice, whereby an action has accrued to the plaintiffs to have and recover the said sum of fifteen dollars.

*Third count.* The defendants, at, &c., on the day of the purchase of this writ, being indebted to the plaintiffs in another sum of fifty dollars, for so much money before that time paid, laid out and expended, by said plaintiffs for said defendants, at their request, in consideration thereof then and there promised to pay the plaintiffs that sum, on demand ; yet, though often requested, the said defendants have not paid said sums, but neglect and refuse so to do, &c.

The plaintiffs produced in evidence a note, as follows :

" *Third Class.* For value received in policy No. 3474, dated the 20th day of June, 1853, issued by the Atlantic Mutual Fire Insurance Company, we promise to pay the said company, or their treasurer for the time being, the sum of fifteen dollars, in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation and by-laws, require.

$15. JOHN H. SANDERS & Co., Principal."

(Number and date to be inserted by the secretary.)

The plaintiffs introduced the charter of the company, and called the secretary, who produced and verified an original application of the defendants for insurance. It is numbered 3474, and is an application for insurance to the amount of $1,000 on their property in Berwick, Me., described as a soap factory, and shed, &c. The secretary produced and verified an original policy, bearing date May 23, 1853, corresponding, in number and in the description and amount insured, with said application, and testified that said application was sent to the office by a Mr. Ricker, an agent of the company, by mail, and that the policy was sent to Mr. Ricker by mail, and afterwards, upon a published notice of the company, to all holders of policies to do so, returned to be cancelled at the office. The plaintiffs contend that by the application, and by the policy, which refers to the application, the by-laws, a copy of which was annexed to said policy, became part of the contract of insurance, and so are properly, as against the defendants, proved by said company.

The act of incorporation, and said application and policy, and said by-laws annexed to said policy, were made part of the case, and are referred to in the discussion.

The secretary testified that said note was made on the 20th day of June, 1853. He produced records of the company, on which appeared the doings of the directors, as follows :

" At a meeting, January 1, 1855, present seven directors, it was voted that an assessment be made against all members of the third class of said company, who were liable for losses happening in said class from January 3, 1854, to January 1, 1855,

by the treasurer, to cover the losses and expenses happening in said class during that time, and that C. C. and T. G. be a committee to make up the rates of said assessment.

" At a meeting, March 12, 1853, present six directors, it was voted that the following be the rates of assessment in the third class of this company, voted, January 1, 1855 ; among others, ' on all notes, dated from March 7, 1853, to January 3, 1854, one hundred per cent.' "

The following notice was published three weeks successively in the News-Letter, printed at Exeter, in Rockingham county, where the company have their office, the first publication having been made on the 12th of February, 1855 :

" *Notice.* An assessment has been ordered by the Directors of the Atlantic Mutual Fire Insurance Company, in the third class, and the same is due and payable March 20, 1855.

J. C. HILLIARD, Treasurer.

Exeter, February 12, 1855."

It was admitted that the plaintiffs' counsel, before suit, exhibited to the defendants the note above stated, with a receipt, as follows :

" ATLANTIC MUT. FIRE INS. Co., Exeter, 1855.

*Third Class.* Received of J. H. S. & Co. 15 dollars 00 cents, being the amount of assessments ordered by the directors of said company, January 1, 1855, on premium note No. 3474, to cover losses which have accrued since January 1, 1854.

J. C. HILLIARD, Treasurer."

Upon the back of this receipt was a statement of losses, and an estimate of " interest, commissions, and expenses."

The defendant declared he would not pay the assessment.

It was admitted that the losses stated had been paid by the company before said assessment, and the secretary testified that the estimate of interest, &c., was made by the secretary and treasurer. There were, during the defendants' insurance, eleven directors of the company, and the secretary stated that for six years or more their meetings had always been held on Monday

of each week, and he believed there was an old record, not produced, which fixed that as the day of their regular meetings.

It appeared that at the meeting of April 10, 1854, when a vote was passed to pay one of the losses, and at the meeting of December 11, 1854, when a vote was passed to pay another loss, only five of the directors were present.

On the secretary's record of notes is the following : " Policy 3474. J. H. Sanders & Co., $1,000. Note, $15. Discharged, October, 1854. Assessment of 1855, $15."

The defendants moved for a nonsuit, for the following reasons and objections, which were seasonably made :

I. The first count is upon a note described as dated June 20, 1853, and the note offered in evidence is not dated.

II. The second count cannot be supported.

1. It does not state any time when the promise was made.

2. The note produced is not described in the count ; a different consideration is proved from that alleged, and the description and consideration are insufficiently alleged.

3. There is a variance between the evidence and the count, as to the time the assessment was made : and,

4. As to the time it was payable.

5. The count is that the directors " required said defendant to pay." The note purports to be a promise to pay " as the directors of said company may, agreeably to their act of incorporation and by-laws, require."

6. The act of incorporation, being a private statute, cannot be proved, because it is not set out or referred to in the count.

7. There is no evidence to prove the by-laws. The policy produced is dated May 23. The note refers to a policy dated June 20. There is no evidence that the defendants received the policy produced.

8. No evidence is admissible to prove the by-laws, because they are not set out or referred to in the count.

9. The act of incorporation and by-laws (if proved) show that a notice was necessary, which is not alleged to have been given.

10. The notice published is insufficient, in not giving the necessary information.

11. No notice of this assessment was published. The notice proved was before the assessment was made.

12. The count is to recover an assessment. By section 9 of the act of incorporation, the action should be on the note.

13. There is no allegation that there were any losses or expenses in the third class, or that the assessment was made to pay the defendants' proportion of losses and expenses, and no evidence of the amount of notes assessed.

14. There is no evidence of any legal meeting of the directors ; no evidence that the directors were notified of any meeting, and the old record, fixing Monday as the regular day of meeting, was not produced.

15. There was no quorum at two meetings of the directors, when they voted to pay losses, for which in part this assessment was made.

16. The amounts of interest, commissions, and expenses, for which in part the defendants were assessed, were not determined by the directors.

III. There is no evidence to sustain the third count, and the foregoing objections are made under this and also the first count.

A verdict was taken, by consent, for the plaintiff, with the agreement that the same be set aside, and a judgment entered for the defendant, or a new trial granted, as the court shall consider.

*Woodman & Doe,* for the defendants.

I. The directors have not required the defendants to pay any thing.

The promise was to pay $15, " in such portions as the directors of said company may, agreeably to their act of incorporation and by-laws, require." "All assessments shall be determined by the directors." Act of Incorporation, sec. 9. To " require" us to pay, was a personal trust, and power which could not be delegated.

January 1, 1855, they " Voted, that an assessment be made, against all members of the third class of this company, who were liable for losses happening in said class from January 3, 1854, to January 1, 1855, by the treasurer ;" and, by the same vote, they appointed a committee " to make up the rates of said assessment."

March 12, 1855, they " Voted that the following be the rates of the assessment voted January 1, 1855."

By the first part of the first vote they attempted to authorize the treasurer to make an assessment, but our promise was to pay " as the directors," and not as the treasurer, should " require." The vote implies that all the members of the third class were not to be assessed, and they left it to the treasurer to decide " who were liable." We did not promise to be bound by his judgment. By the second vote they merely adopted and ratified the report of the committee appointed " to make up the rates of said assessment." In the first vote they made a distinction between making the assessment and making up " the rates of said assessment ;" and in the second vote they discriminate between the assessment and " the rates of the assessment voted January 1, 1855." They did not intend, by the second vote, to make an assessment, or to " require" an assessment to be paid, for they refer to the " assessment" as " voted January 1, 1855," and they evidently supposed that a legal assessment was made by the vote passed January 1. If, in the second vote, they had expressly declared that they did not intend thereby to " require" an assessment to be paid, their purpose would not be more apparent than it is from the language actually used. By the first vote they only attempted to transfer an authority that was not negotiable ; by the second vote they did not intend or attempt to " require" an. assessment to be paid. They have as yet only adjusted the rates of an assessment which has not been legally voted.

II. The directors have not fixed the time when the defendants were to pay.

The promise was to pay " at such time or times as the direct-

ors of said company may, agreeably to their act of incorpora-
tion and by-laws, require." There is no allusion, in either of
their votes, to the time when the assessment should be paid. It
cannot be inferred that they intended to make it payable on de-
mand. If the contract provided no time of payment, the law
would presume what the intentions of the parties were. But
fixing the time by the directors was a necessary, positive act and
condition precedent, and the law cannot do what the contract
required the directors to do.

But they could not, " agreeably to their act of incorporation
and by-laws, require" us to pay, on demand, and, if they had
expressly voted an assessment, payable on demand, it would have
been void. " The sum to be paid by each member" * * " shall
be paid to the treasurer within thirty days next after notice of
said assessment shall have been published." Act of Incorpora-
tion, sec. 9. The last publication of notice " shall not be less
than six days prior to the time fixed for the payment." By-laws,
Art. 4.

The notice published states that an assessment " is due and
payable March 20, 1855 ;" but that time was probably fixed by
the treasurer. It was not fixed by the directors, who alone
were authorized.

III. The published notice was insufficient.

1. It was published before the assessment was made.

If a legal assessment was made, it was not till the second vote,
because it was not determined " who were liable," and the rates
were not fixed till then, and under the first vote every thing was
to be done by proxy. The second vote was passed March 12;
the notice was published February 12, 19 and 26, and it inform-
ed us of an event which had not happened.

2. It made the assessment " due and payable March 20" —
eight days after the rates were determined. We could not pay
until the rates were determined, and we were to have thirty days
to pay in. Act of Incorporation, sec. 9.

3. It did not specify who were to pay, nor how much was to
be paid.

It states that "an assessment has been ordered * * in the third class." It does not state that an assessment was ordered upon all the third class, or upon certain persons in that class. We could not ascertain from it how much we were assessed, nor that we were assessed at all, as we could have done if it had given the dates of the notes and the rates, as they were recited in the second vote, or if it had given the numbers of the policies and the rates.

By the terms of the contract, the directors were to do three things before we were to pay any thing. They were to require us to pay, to determine the amount to be paid, and to fix the time of payment. And we should have been entitled to notice of those three things — they being facts peculiarly within the knowledge and privity of the plaintiffs — if the contract had not provided for notice by requiring the directors to proceed " agreeably to their act of incorporation and by-laws." *Austin* v. *Walker*, 3 Foster (23 N. H.) 491.

The act of incorporation and by-laws require a published notice, and that is the only notice to which we are entitled. The plaintiffs might rightfully refuse to give, and the defendants might rightfully refuse to receive notice in any other way than by publication. That notice should contain such information that the defendants could tender the amount of their assessment to the plaintiffs, so as to avoid the cost of a suit. It was not intended that all the members of the company, living in various parts of the country, could be compelled to send to Exeter for information, before they could pay assessments.

The provision of article 4 of the by-laws, that "notice of assessments, designating the class or classes of property assessed, shall be given by the treasurer, and published," does not limit the information to be given to " designating the class or classes of property assessed," but was adopted as a new mode of designating the persons assessed ; a new designation having become necessary on the introduction of classes into insurance companies. It was not intended to be a full definition of the required notice. The terms, " notice of said assessment," and " notice of

assessments," imply notice of all the facts upon which the liability to pay an assessment accrues, or the same notice to which we should be entitled if the contract had not referred to the act of incorporation and by-laws. The only change intended to be made, by the act and by-laws, in the notice which the law would require, was in requiring it to be published, and making a publication sufficient, in order to avoid the necessity of giving personal notice. There might be thousands of members, and publication would save the plaintiffs great expense and trouble. The personal notice to the defendants by the plaintiffs' counsel is of no avail. If the company could substitute a personal for a published notice, assessments would virtually be payable at sight and on demand, and if the members could not pay in an instant, they would be liable to immediate suit, instead of having the thirty days' notice; and they might be put to cost and inconvenience which the contract and the act and by-laws were intended to prevent, as unnecessary and unjust, by making assessments not due till thirty days after published notice.

The other points made in the motion for nonsuit are, perhaps, stated fully enough in the case.

*Jordan* and *Rollins*, for the plaintiffs.

BELL, J. It is objected that the first count is not supported by the evidence. The note declared on is alleged to be dated June 20, 1850, but the note produced has no date. A copy of the note is given. It begins, For value received, in policy No. 3474, dated the 20th day of June, 1853. It has no date, unless this reference to the date of the policy can be so considered, for which there seems to be no pretence. "In all actions on bills of exchange, promissory notes, or other written instruments, not under seal, the date being a material part of the instrument, must be stated, as it appears on the face of the instrument. The slightest variance will be fatal." Arch. Cri. Pl. 115, 363; Lawes' Asst. 92; 1 Ch. Pl. 258; *Mathews* v. *Spirer*, 2 Stra. 806; Gould's Pl. 90; Bayley on Bills 304; 1 Saund. Pl. & Ev.

260; 1 Greenl. Ev. sec. 61. This defect is ground of nonsuit. Arch. Cri. Pl. 115, 545.

II. It is objected to the second count, that it does not state any time when the promise was made. But this is a defect which can be taken advantage of on demurrer only. Arch. Civ. Pl. 115, 541; 1 Tidd's Pr. 649; Yel. 94, note 1.

If a day was stated, without describing the note as dated on that day, it would not be material. Arch. Civ. Pl. 115; 1 Saund. Pl. & Ev. 260; *Coxon* v. *Lyon*, 2 Camp. 307, n. If the count want time, place, or other circumstances, it may be aided by the defendants' bar. 8 Co. 120, b.; Doct. Pl. 279; Arch. Civ. Pl. 178; Com. Dig., Pleader, C, 85; or by the verdict; 1 Saund. 228, a.; Arch. Pl. 178; Gould's Pl. 499; *Blackwell* v. *Eales*, 5 Mod. 286; Com. Dig., Pleader, C, 19, 87.

This defect is no ground of nonsuit.

2. It is not perceived that there is any foundation in fact for the second objection. The note is stated almost literally, and its legal operation is properly stated. It is not seen how the note or its consideration could be better stated.

3. The day upon which the directors make the assessment was not material.

The precise time [when any material or traversable fact happened,] is not material, unless it constitutes a material part of the contract declared on; or where the date of a written contract or record is averred. 1 Ch. Pl. 258; Arch. Civ. Pl. 115; Gould's Pl. 88; Co. Litt. 283, a; Greenl. Ev. 69, sec. 61; Lawes' Asst. 92.

4. The same rule applies to the time of payment.

5. It is objected that the breach of the contract is not well laid, the note being, " to pay as the directors of said company may, agreeably to their act of incorporation and by-laws, require;" while the allegation is that the defendants " required said defendants to pay."

" The breach must obviously be governed by the nature of the stipulation. It should be assigned in the words of the contract, either negatively or affirmatively, or in words which are

coëxtensive with the import or effect of it." 1 Ch. Pl. 326 ; Com. Dig., Pleader, C, 45, 47 ; *Ibid.* 2, V., 2 ; 2 Saund. 181, 186, n. 10.

" But if a breach assigned be not in the words of the covenant, but shorter or larger than the covenant, it is bad." Com. Dig., Pleader, C, 47 ; Lawes' Pl. in Asst. 275.

But this defect is to be taken advantage of by demurrer, &c. Lawes' Asst. 258, 282 ; *Charnley* v. *Winstanley*, 5 East 266 ; and not by a nonsuit.

6. It is said the act of incorporation, being a private statute, cannot be proved, because it is not set out or referred to in the count. But we are not aware of any ground on which this point can be sustained. There is no general principle which forbids the proof of a private statute, where it is not pleaded. And it is not seen why, if in this case the breach had been laid, that the directors, agreeably to their act of incorporation and by-laws, did require the defendant to pay, they might not prove their act and by-laws, and an assessment in conformity to them.

It does not seem it can be necessary to set out the provisions of the charter and by-laws before any evidence can be necessary to prove them.

An assessment, which was not in conformity to the charter and by-laws, would be merely ineffectual.

7. There is no evidence, it is said, of the by-laws. A policy was produced, to which certain printed by-laws are attached, and they are referred to by the policy and made part of it. We do not understand that any question is made, that if a policy is shown to have issued to the defendant, with by-laws attached, and referred to, corresponding in date, &c., to the note, the same evidence which proved the policy would not sufficiently prove the by-laws. The objection is, rather, that the note refers to a policy dated June 20. The policy produced is dated May 23, and it is alleged that there is no sufficient evidence that the defendant received the policy now produced.

The evidence as reported is not very satisfactory. An application for insurance, agreeing in number, amount and descrip-

tion of property, with the policy produced, and in number with the policy, as described in the note, is produced ; but nothing is said of the date of it. The secretary testifies that the note was dated June 20, but he says nothing of the date of the application, or of the time when the policy issued. The error, if it is one, in the date of the policy, as stated in the note, is not conclusive against the admissibility of the policy produced. Effect is to be given to all the words of description of any person or object referred to in any writing or contract, if it can be done ; but if that is not practicable, and the person or thing intended can be ascertained from such part of the description as is found to be correct, effect will be given to that part of the description, and the residue will be rejected as erroneous. Here the policy referred to may be regarded as sufficiently identified by the number ; and the fact that it is a policy issued by this company, to these defendants, and there being no suggestion that any other had been issued to them, it was competent, then, for the jury to find, if the evidence satisfied them of the fact, that the policy produced is that referred to in the note, and to reject the date as a mistake in the description. *Emerson* v. *White*, 29 N. H. (9 Foster) 482.

The evidence of the secretary that the application was taken by Ricker, sent to the office by mail, and the policy sent to him, and that the policy was subsequently returned to the office, upon a notice to holders of policies to return them, had a tendency, in the absence of any complaint or inquiry by the defendants, or denial, when payment was demanded, to show that the policy had been received by them. If it was so received, it would be evidence of the by-laws attached to it, and it must be for the jury to judge whether this evidence warranted the belief that the policy had been received, and was returned by the defendants.

8. It is said no evidence was admissible to prove the by-laws, because they were not set out or referred to in the count. This objection does not seem well founded, in fact, since the by-laws are distinctly referred to in the count, in stating the contract. But if it were not so, it was not necessary to allege the by-laws

in the declaration, in order to make proof of them admissible. It might be entirely sufficient, to render such proof proper, to refer to them in the breach as is done in the note, alleging that the directors, agreeably to their act of incorporation and by-laws, did require payment, &c. But whether any, and if any, what allegation in this respect was required to show a good ground of action, is a matter to be determined by a demurrer, and not on a motion for a nonsuit. Whether the breach was properly alleged or not, it seems clear that the plaintiffs might show their charter and by-laws, to prove their assessments regular.

9. The general principle as to notice before suit is thus laid down in Lawes on Asst. 210: " If the defendant's performance is to depend upon any act to be done by the plaintiff, and which lies merely within his own knowledge, notice of his doing such act ought to be expressly averred. So, where the promise depends upon the performance of an action by a stranger, and the particular person is uncertain, or unknown. But whether notice was necessary to be alleged in a particular case, cannot be determined upon a motion for a nonsuit, or new trial."

10, 11: It is said the notice published is insufficient, in not giving the information required by the charter and by-laws. It was published before the assessment was made. As the declaration is sustained upon the ground that it must be presumed that this fact was proved, or no verdict would have been rendered in favor of the plaintiff, it becomes necessary to examine the requirements of the charter and by-laws, and to see how far the evidence offered shows them to have been substantially complied with. By the note, the payments are to be made " as the directors may require, according to their act of incorporation and by-laws." By the second article of the charter, " All property, whether real or personal, insured by said company, shall be divided into four separate and distinct classes, and each class shall be liable for its own losses. The premium notes of each class of risks shall be holden and assessed to pay the losses occurring in their respective classes, and not each for the other ;

and the policy of each member of the company shall designate with which class of risks he is associated. The company shall open books of account with each class of risks, and all the business, receipts, disbursements, losses, assessments, and expenses, shall be put to the several classes to which they are applicable ; and the general expenses of the company, which are not strictly applicable to either class, shall be apportioned to the several classes, according to the amount insured by each."

By the 9th article, " All assessments shall be determined by the directors ; and the sums to be paid by each member shall always be in proportion to the amount of his deposit note of the class in which his property is embraced, and shall be paid to the treasurer within thirty days next after notice of said assessment shall have been published."

By article 4 of the by-laws, " Notice of assessments, designating the class or classes of property assessed, shall be given by the treasurer, and published in one or more newspapers printed in the county of Rockingham, three weeks successively, the last publication of which shall not be less than six days prior to the time fixed for the payment, and may be published in such other newspaper or newspapers as the directors may deem necessary or expedient." And by article 13, of the by-laws, " Every person insured shall be liable for his proportion of all losses and expenses of the class to which he belongs of the company, until he cause his policy to be discharged, and such proportion of losses and expenses paid ; notwithstanding he may by some act or neglect have rendered his policy void as against the company."

It is to these provisions that we understand the terms of the note in question to refer, where it is said, " We promise to pay to said company, or their treasurer, fifteen dollars, in such portions and at such times as the directors, agreeably to their act of incorporation and by-laws, may require ;" and its language may be regarded as equivalent to saying, in such assessments as the directors, agreeably to their charter and by-laws, may make. The sums assessed by the directors, are the sums they require

to be paid, and the times when assessments are required by the charter and by-laws to be paid, are the times the directors require payments on notes to be made. If the assessments are duly made, according to the act of incorporation and by-laws, this is all the requirement necessary to be made for the payment of the note.

What, then, is necessary to make a valid assessment? or, in other words, to designate the portion of the premium note required to be paid, and the time of payment?

The directors *must determine the assessment.* Nothing more is to be done by them. The rule by which the assessment is to be made is fixed by the charter itself, leaving no discretion to be exercised by the directors, or by any body else. The losses and expenses occurring in each class, with a proportionate amount of the expenses not specially chargeable to either class, are to be assessed upon every person insured in the class, in proportion to the original amount of his premium note. This is all matter of mere arithmetical computation, which can be done by any competent person, and requires no action of the directors.

An assessment, with reference to this question, has no resemblance to the assessment of a public tax. Such assessment implies the exercise of the judgment of the assessors, as to the persons to be assessed and the value of the estate to be taxed, as well as the computation of the amount each is to pay. It has nothing to do with the decision of the question whether a tax shall be laid ; while the assessment, or the determination of the assessment, which is the only duty of the directors, is much more analogous to the vote of the town for raising a tax.

The note in question is payable at such time or times as the directors may require, agreeably to their act of incorporation and by-laws. The charter, article 9, declares that " all assessments shall be paid to the treasurer within thirty days next after notice of said assessment shall have been published." The time, then, within which such assessments shall be paid, is not a matter within the discretion of the directors, further than that they are to determine at what time assessments shall be made.

Their act of incorporation, then, determines at what time after that the payments are to be made. The publication of notice is not by the by-laws any part of the duty of the directors, since they, in express terms, impose that duty upon the treasurer. Article 4 provides that "notice of assessments, designating the class or classes of property assessed, shall be given by the treasurer;" the directors having no other duty in the matter than to direct, if they think it expedient, that notice should be given in other newspapers than that selected by the treasurer.

The notice shown in the case seems an exact and literal compliance with the by-law, before recited. It is a notice of the assessment, and it designates the class, and whatever may be our opinion as to the expediency in such associations of giving more full and definite notice of such assessments, the by-law requires no more than was done.

From the nature of the case it seems that notice of the sum to be paid on each premium note could not be intended, since the number of policies issued by some of these companies amounts to thousands, and no newspaper in some such cases could contain the notice. Some brief notice of the assessment must be intended. In practice, as we understand, a notice, stating the percentage to be paid on notes of certain dates, has been usually published, and we have never heard of any objection to such a notice. But an advertisement of that sort does not give notice to any individual of the amount he is to pay, unless he knows the date of his premium note, which is, as we infer from the notice at the foot of the note here in suit, not inserted at the making of the note, but is inserted, if it is dated at all, by the secretary. Full notice of the amount to be paid is not, then, required to be given in the published notice ; and it is shown that the defendants had actual notice of the precise amount claimed, and of the losses and expenses which gave rise to the assessment. So far as notice is required by the general rules of pleading, this evidence was all that could be required.

12. It is objected that the count is brought to recover an

assessment.  The action, it is said by the charter, should be for the whole note.

The provision of the charter referred to, the 9th section, provides that "if any member shall, for the space of thirty days after notice, neglect to pay the sum assessed upon his note, &c., the directors may sue for and recover the whole amount of said deposit note, with costs of suit."  This clause does not require a suit for the whole ; it allows it, if the directors so choose.

13.  It is said there is no allegation that there were any losses or expenses in the third class, or that the assessment was made to pay the defendants' proportion of losses and expenses, and no evidence of the amount of notes assessed.  As we have before remarked, the want of these allegations is a defect of the declaration, at most, of which the defendants must take advantage by a demurrer ; it is no ground of nonsuit.  It was distinctly admitted that the losses and expenses enumerated on the receipt, offered to the defendants, were losses and expenses in this class.

The records and votes of the corporation, and of the directors, were competent evidence of the proceedings of the board.  The directors, by the terms of the note, were the board to determine the assessment, and their vote, determining the rate of assessment upon notes of different dates, must be *primâ facie* evidence of a regular assessment.

14.  There is no evidence, it is said, of a regular meeting of the directors.  It appeared that for six years the stated meetings had been holden every Monday, as the secretary believed, in pursuance of an old vote, not produced.  It was wholly immaterial in what way the day of the regular meetings was fixed.  If it had been fixed by usage, a tacit understanding of the members, or in any other way, it was enough.  The only effect of a stated day of meeting is to dispense with the necessity of showing a notice of the meeting to absentees.  In whatever way the day was fixed, this object was obtained.  The evidence that a day was fixed by common consent, is sufficient to show notice to all of the meetings on that day.

15.  There was no quorum at two of the meetings at which

losses were allowed. That was an affair of which third persons can take no advantage. The losses are admitted to be real. The duty to admit them clear. The assent of the others might be fairly assumed from their acquiescence. The vote of a quorum to assess their members to pay these losses, or to pay the debts incurred to meet them, was a distinct, unequivocal evidence of a ratification of their allowance and payment.

16. The suggestion that the amount of interest, commission, &c., was not estimated by the directors, seems not well founded. The rates of assessment were approved by the board on the basis of this estimate. It is immaterial by whom it was made.

III. There does not seem to be any evidence to support the third count. The company paid their own debts, and not any debts of the defendants. The defendants had assumed certain obligations to the company, on which they were liable to be sued, but their contract was special, and they must be sued upon it specially.

It is very clear that the claim of the plaintiffs is just and equitable. The defendant is asked to pay for two years' insurance of his property, no more than is often paid in stock offices for the like risk.

The company are merely trustees for the members, and they have a mutual claim on each other for a just division of the losses and expenses. It is not suggested that there is any fraud, unfairness, or dishonesty in the proceedings of the directors, or of the company; and a judgment for the plaintiff is in accordance with the substantial justice of the case.

On the first count there was a variance in the proof, and on the third a defect of evidence, which would entitle the defendants to a nonsuit; but on the second there was no sufficient cause of nonsuit, and, as a nonsuit must be of the whole action, it was properly refused.

There must, therefore, be

*Judgment on the verdict.*